SEALED

NORTHERN DISTRICT OF TEXAS
FILED

MAY 1 8 2017

CLERK, U.S. DISTRICT COURT
By _____
Deputy

# UNITED STATES DISTRICT COURT

for the

Northern District of Texas

| In the Matter of the Seizure of | ) |
| *(Briefly describe the property to be seized)* | ) |
| A 2016 BMW 750LXI Sedan, Vehicle Identification Number | ) |
| WBA7F2C58GG416750, Texas License Plate GNT5131, owned | ) |
| and registered to HJLM Holding, LLC 558 Hemphill Street Fort | ) |
| Worth, Texas 76104 | ) |

Case No.   3:17-MJ- 401- BF

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the _____Northern_____ District of _____Texas_____ is subject to forfeiture to the United States of America under _____18_____ U.S.C. § _____981_____ *(describe the property)*:

A 2016 BMW 750LXI Sedan, Vehicle Identification Number WBA7F2C58GG416750, Texas License Plate GNT5131, owned and registered to HJLM Holding, LLC 558 Hemphill Street Fort Worth, Texas 76104

The application is based on these facts:
See Affidavit of Special Agent Adam Watson in Support of Seizure Warrant

☑ Continued on the attached sheet.

_____
*Applicant's signature*

Special Agent Adam Watson, USPS
*Printed name and title*

Sworn to before me and signed in my presence.

Date: May 18, 2017
2:45 AM

_____
*Judge's signature*

City and state:   Dallas, Texas

United States Magistrate Judge Paul D. Stickney
*Printed name and title*

## AFFIANT IN SUPPORT OF A SEIZURE WARRANT

1.      I, Adam Watson, a Special Agent with the United States Postal Service, Office of

Inspector General, being duly sworn upon my oath, states as follows:

## AFFIANT EXPERIENCE AND EMPLOYMENT

2.      I have been a Special Agent with the United States Postal Service, Office of

Inspector General ("USPS-OIG") since May 2005.  Prior to my employment with the

USPS-OIG, I was employed as a U.S. Postal Inspector from July 2003 thru May 2005.

As a Special Agent with USPS-OIG, I am charged with investigating violations of the

laws of the United States, collecting evidence in cases in which the United States is or

may be a party in interest, and investigating crimes involving funding from the United

States Postal Service.  During my tenure as a Special Agent, I have been trained in the

execution of search and seizure warrants for documents and other evidence in cases

involving violations of federal law, including but not limited to: Title 18, United States

Code, Sections 1347 (Health Care Fraud), 1349 (Conspiracy to Commit Health Care

Fraud), 1956 (Money Laundering), and 1957 (Money Laundering), and Title 42, United

States Code, Section 1320a-7b(b) (Receipt or Payment of Kickbacks).  I am currently

assigned to the Houston Office, Southern Area Field Office of the USPS-OIG and I am

being assisted in the investigation by the Department of Labor, Office of Inspector

General ("DOL-OIG"), Internal Revenue Service, Criminal Investigations ("IRS-CI"),

and Department of Veterans Affairs Office of Inspector General ("VA-OIG"),

## PROPERTY TO BE SEIZED

3.     This affidavit supports an application for a warrant to seize the following property:

A 2016 BMW 750LXI Sedan, Vehicle Identification Number WBA7F2C58GG416750,

Texas License Plate GNT5131, owned and registered to HJLM Holding, LLC 558

Hemphill Street Fort Worth, Texas 76104.

## LEGAL AUTHROITY FOR SEIZURE

4.     The property described above is subject to seizure under Title 18, United States

Code, Section 981(b)(1) because it is subject to forfeiture to the United States.

5.     The property is subject to civil forfeiture under Title 18, United States Code,

Section 981(a)(1)(C) as it constitutes or is derived from proceeds traceable to a specified

unlawful activity, or a conspiracy to commit such offense. Title 18, United States Code,

Section 1956(c)(7)(F) categorizes "any act or activity constituting an offense involving a

Federal health care offense" as a specified unlawful activity. Title 28, United States

Code, Section 2461(c) makes criminal forfeiture possible where a criminal law has been

violated and civil forfeiture is authorized in connection with the offense.

6.     Title 18, United States Code, Section 981(b) provides that property subject to

forfeiture under subsection (a) may be seized with a warrant by the United States Postal

Service.

### The Federal Employee Compensation Act and Health Care Benefits (Generally)

7.     Title 18, United States Code, Section 24(b) defined a health care benefit program

as any public or private plan or contract, affecting commerce, under which any medical

2

benefit, item, or service was provided to any individual and included any individual or entity who provided a medical benefit, item, or service for which payment may be made under the plan or contract. The Federal Employee's Compensation Act ("FECA") was a health care benefit program as defined in Title 18, U.S.C. Section 24(b).

8.      FECA provided for payment of workers' compensation benefits to federal employees who suffered an injury, disease, or death in the performance of duty. To establish a claim for benefits, a medical condition was required to be causally related to a claimed injury, disease, or death. Benefits were only available while a work-related condition continued. The benefits under FECA included continuation of pay ("COP") for up to 45 calendar days, compensation for lost wages, all necessary medical care, medical supplies and prescription drugs, vocation rehabilitation services, and disability payments. FECA provided coverage for pharmaceuticals necessary to treat symptoms which were the result of a work-related injury when prescribed by a doctor and medically necessary.

9.      The Department of Labor ("DOL") Office of Workers Compensation Program ("OWCP") administered the benefits under FECA. Providers of health care services were required to enroll with DOL-OWCP to receive a provider identification number and reimbursement under FECA. Form OWCP-1168 was used for enrollment and updating provider information. By completing and submitting Form OWCP-1168, a provider certified that all the Federal and State licensure and regulatory requirements applicable to their provider type were satisfied.

10.     DOL-OWCP contracted with Affiliated Computer Services ("ACS") to provide medical claims processing and payments. Providers were required to identify on each

3

claim the services provided. All claims submitted were required to be supported by

medical evidence. The submission of a claim and acceptance of payment by a provider

signified that the service for which reimbursement was sought, was performed as

described, necessary, appropriate, and properly billed in accordance with accepted

industry standards. It was not within industry standards, among other things, to charge

for services that were not necessary and not legitimately prescribed.

11.    Payments were sent to providers via electronic funds transfer ("EFT").

Remittance notices that listed all the claims paid on each EFT were sent to providers.

### Compound Drugs (Generally)

12.    In general, "compounding" is a practice in which a licensed pharmacist, a licensed

physician, or, in the case of an outsourcing facility, a person under the supervision of a

licensed pharmacist, combines, mixes, or alters ingredients of a drug or multiple drugs to

create a drug tailored to the needs of an individual patient. Compound drugs are not

approved by the U.S. Food and Drug Administration ("FDA"); that is, the FDA does not

verify the safety, potency, effectiveness, or manufacturing quality of compound drugs.

The Texas State Board of Pharmacy regulates the practice of compounding in the State of

Texas.

13.    Compound drugs may be prescribed by a physician when an FDA-approved drug

does not meet the health needs of a particular patient. For example, if a patient is allergic

to a specific ingredient in an FDA-approved medication, such as a dye or a preservative,

a compound drug can be prepared excluding the substance that triggers the allergic

reaction. Compound drugs may also be prescribed when a patient cannot consume a

4

medication by traditional means, such as an elderly patient or child who cannot swallow an FDA-approved pill and needs the drug in a liquid form that is not otherwise available.

## FRAUD OVERVIEW

### The Subjects of Investigation, Co-conspirators, and Related Companies

14.     Ability Pharmacy, Inc. (Ability) was a compound pharmacy doing business at 558 Hemphill Street, Fort Worth, Texas and incorporated on October 24, 2006.  Ability was a DOL- OWCP provider.

15.     Industrial & Family Pharmacy, Inc. (Industrial & Family) was a compound pharmacy doing business at 2301 NE 28th Street, Fort Worth, Texas and incorporated on January 26, 2015.  Industrial & Family was a DOL-OWCP provider.

16.     Park Row Pharmacy, LLC. (Park Row) was a compound pharmacy doing business at 701 West Park Row Drive, Suite 707, Arlington, Texas and formed on September 8, 2012.  Park Row was a DOL-OWCP provider.

17.     Bandoola Pharmaceutical, LLC. (Bandoola) was a Texas company formed on August 29, 2014 that had a purported principal place of business at 401 College Avenue, Fort Worth, Texas.

18.     Jade and Joy Holdings, LLC (Jade and Joy Holdings) was a Texas company formed on May 17, 2011 that had a purported principal place of business at 6210 Campbell Road, Suite 160, Dallas, Texas.

19.     HLJM Holdings, LLC (HLJM Holdings) was a Texas company formed on January 26, 2012 that had a purported principal place of business at 558 Hemphill Rd, Fort Worth, Texas.

20.     Queen Shiva LLC (Queen Shiva) was a Texas company formed on August 4, 2008 that had a purported principal place of business at 558 Hemphill Rd, Fort Worth, Texas.

21.     Jamshid Noryian, a resident of Travis County, was an owner and operator of Ability, Industrial & Family, Park Row, Queen Shiva, Bandoola, Jade and Joy Holdings, HLJM Holdings, and other companies.

22.     Dehshid Nourian, a resident of Collin County, Texas, was a licensed pharmacist and the President of Ability, Director of Industrial & Family, and Manager of Park Row. He was the pharmacist-in-charge at Ability and Park Row.

23.     Christopher Rydberg, a resident of Tarrant County, was a Governing Person of Bandoola, the Chief Financial Officer of Ability, Vice President of Industrial & Family, Vice President of Park Row, Vice President of HJLM Holdings, and Vice President of Queen Shiva.

24.     Ashraf Mofid, a resident of Grayson County, Texas was a Governing Person of Bandoola and authorized signor for Bandoola bank accounts.

25.     Leyla Nourian, a resident of Collin County, was a licensed dentist and Managing Member of Jade and Joy Holdings, Member of HJLM Holdings, Member of Queen Shiva, and authorized signor for Bandoola bank accounts.

26.     Leslie Benson, a resident of McLennan County, was a licensed physician with a primary practice in occupational medicine.  Leslie Benson owned and operated three clinics located at 2114 Birdcreek Drive, Temple, Texas, 3320 Hillcrest Drive, Waco, Texas, and 3616 Altamesa Boulevard, Fort Worth, Texas.

27.     Michael Taba, a resident of Collin County, was a licensed physician with a primary practice in orthopedic surgery.  Michael Taba was a member of Advanced Orthopedics located at 1705 Ohio Drive, Suite 200, Plano, Texas.

28.     Kevin Williams, a resident of Ellis County, was a licensed physician with a primary practice in orthopedic surgery.  Kevin Williams was the President of Ennis Orthopedics PA, located at 802 W Lampasas Street, Ennis, Texas.  Kevin Williams was also the Manager of Magnum Surgical Products LLC., located at 241 Cody Road, Ennis, Texas.

29.     From in or about May 2014 continuing to in or about March 2017, Ability, Industrial & Family, and Park Row received payments from DOL-OWCP for claims these pharmacies submitted to DOL-OWCP into JP Morgan Chase Bank accounts *2280 and *9863, Prosperity Bank account *9542, Wells Fargo Bank account *0302, and BBVA Compass Bank account *4076.

30.     From in or about May 2014 continuing to in or about March 2017, Ability, Industrial & Family, and Park Row billed FECA through DOL-OWCP at least approximately $158 million for claim reimbursements to which they were not entitled.

### The Conspiracy

31.     From in or about May 2014 and continuing to in or about March 2017, in the Dallas Division of the Northern District of Texas and elsewhere, Jamshid Noryian, Dehshid Nourian, Christopher Rydberg, Ashraf Mofid, Leyla Nourian, Leslie Benson, Michael Taba, and Kevin Williams did knowingly, intentionally, and willfully combine, conspire, confederate, and agree with each other and with other persons to commit certain

7

offenses against the United States, that is, to knowingly and willfully execute, and

attempt to execute a scheme and artifice to defraud FECA, a health care benefit program

as defined in 18 U.S.C. § 24(b), and to obtain money and property owned by and under

the custody and control of FECA, by means of materially false and fraudulent pretenses,

representations, and promises, in connection with the delivery of or payment for health

care benefits, items and services, in violation of 18 U.S.C. § 1347.

### Object of the Conspiracy

32.    It was the object of the conspiracy for the subjects of the investigation and others

to unlawfully enrich themselves, by submitting false and fraudulent claims for health care

benefits to which they were not entitled.  The false and fraudulent claims were for

compound medications that were not legitimately prescribed, not wanted, not needed, not

used, and which were the product of kickbacks.

### Manner and Means of the Conspiracy

33.    The manner and means by which the subjects of the investigation sought to

accomplish the object of the conspiracy included, among other things:

### The Scheme to Defraud

34.    Jamshid Noryian, Dehshid Nourian, and Christopher Rydberg obtained and

maintained control of Ability, Industrial & Family, and Park Row (collectively "the

pharmacies") solely to achieve the objective of their scheme to defraud: to unlawfully

enrich themselves by submitting false and fraudulent claims for health care benefits to

which they were not entitled.

35. Christopher Rydberg, Dehshid Nourian, and others filed, and caused to be filed, Payment Information Forms for Ability, Industrial & Family, and Park Row to transmit payment electronically from DOL-OWCP to the pharmacies.

36. R.R., a pharmacist, formulated compound creams and vitamins with ingredients intended to maximize reimbursement from DOL-OWCP. The creams were for scars, wounds, and pain and had DOL-OWCP reimbursement rates of up to approximately $28,000 per container.

37. Jamshid Noryian, R.R., and others created a prescription pad to be provided to doctors referring prescriptions to Ability.

38. Jamshid Noryian marketed the creams to doctors treating DOL-OWCP patients and induced doctors to send unnecessary and excessive prescriptions for compound medications to the pharmacies with payments.

39. Leyla Nourian recruited Michael Taba to write prescriptions for compound medications for DOL-OWCP patients to be filled by Ability.

40. Leslie Benson and Michael Taba toured Ability and were provided with prescription pads from the pharmacies to ensure that all prescriptions written by these doctors for compound creams would be sent to the pharmacies.

41. Leslie Benson, Michael Taba, and Kevin Williams sent, and caused to be sent, prescriptions to the pharmacies in return for payments from Jamshid Noryian, Dehshid Nourian, Ashraf Mofid, Leyla Nourian, and Christopher Rydberg.

42. Ashraf Mofid, Christopher Rydberg, and Leyla Nourian operated Bandoola Pharmaceutical in order to make payments to doctors for referring prescriptions of DOL-

OWCP patients to the pharmacies and concealed these payments with "promissory notes" to make it appear as though the payments were loans instead of payments for sending prescriptions to the pharmacies.

43.     Jamshid Noryian instructed employees of Ability to contact patients and doctors and request refills when the pharmacy was not processing sufficient prescriptions.

44.     Leslie Benson, Michael Taba, and Kevin Williams prescribed unnecessary pain creams when patients were already prescribed controlled substance medications for pain management.

45.     Jamshid Noryian controlled, and attempted to control, medical treatment for patients of s Michael Taba and Leslie Benson by offering and providing inducements to office staff to ensure compound prescriptions were written for the most patients and sent to Ability and Industrial & Family.

46.     Jamshid Noryian offered free rent and other inducements and payments to Leslie Benson, his tenant, for writing prescriptions for compound medications and referring them to the pharmacies.

47.     Leslie Benson wrote prescriptions for compound medications for all patients regardless of whether they wanted or needed the medications.

48.     Leslie Benson referred approximately 3,968 prescriptions for DOL-OWCP patients to Ability and Industrial & Family.  Leslie Benson caused at least approximately $20 million to be billed by Ability and Industrial & Family to DOL-OWCP.

49.    Jamshid Noryian maximized, and attempted to, maximize prescriptions by contacting the office of Michael Taba if prescriptions had not come in that week to ask why no prescriptions had come in.

50.    Jamshid Noryian instructed Ability employees to go to Michael Taba's clinic where they would work with Michael Taba's staff to fill out prescriptions, stamp Michael Taba's signature on prescriptions, and contact patients about receiving prescriptions.

51.    Michael Taba instructed his employees to review his patient visit schedule at the end of each day, write prescriptions for compound creams for each patient, and send the prescriptions to the pharmacies.  The medications were not tailored to the individual patient; every patient received the same compound medications.

52.    Ashraf Mofid, Leyla Nourian, and Christopher Rydberg wrote checks to Michael Taba for sending prescriptions to Ability and Industrial & Family Pharmacy.

53.    Michael Taba referred approximately 3,527 prescriptions to DOL-OWCP to Ability and Industrial & Family.  Michael Taba caused at least approximately $33 million to be billed by Ability and Industrial & Family to DOL-OWCP.

54.    Jamshid Noryian and Dehshid Nourian obtained Park Row for the sole purpose of filling out-of-state prescriptions written for DOL-OWCP patients by Kevin Williams.

55.    Kevin Williams wrote prescriptions for wound and scar medications when patients did not need the medications because they had not had surgery and were not planning to have surgery.

56.     Christopher Rydberg met Kevin Williams in the parking lot of Queen Shiva, and other locations, to deliver checks to him for referring prescriptions for DOL-OWCP patients to the pharmacies.

57.     Jamshid Noryian instructed his employees to deliver prefilled prescriptions to Kevin Williams's office for signature.

58.     Kevin Williams referred approximately 10,484 prescriptions to DOL-OWCP to Ability, Industrial & Family, and Park Row.  Kevin Williams caused at least approximately $90 million to be billed by Ability, Industrial & Family, and Park Row to DOL-OWCP.

59.     Jamshid Noryian closely monitored the claims submitted to DOL-OWCP, and the payments received, by checking a computer program several times a day to see the amount of money that had been billed for the day.  Jamshid Noryian instructed employees to text him the amount of money made at the end of the day if he was out of the office.  Jamshid Noryian told employees and others that he made $1 million a day off of the compound medications.

60.     Jamshid Noryian, Dehshid Nourian, Christopher Rydberg, Ashraf Mofid, Leyla Nourian, Leslie Benson, Michael Taba, and Kevin Williams caused to be submitted to FECA through OWCP, at least approximately $158 million in false and fraudulent claims and received at least approximately $82 million as payment for those claims.

61.     Beginning in or about April 2015, and continuing thereafter to in or about March 2017, the exact dates being unknown, in the Dallas Division of the Northern District of Texas and elsewhere, Jamshid Noryian, Dehshid Nourian, Christopher Rydberg, Ashraf

12

Mofid, and Leyla Nourian did knowingly combine, conspire, and agree with each other and with other persons known and unknown to commit offenses against the United States in violation of Title 18, United States Code, Section 1956 and Section 1957, to wit:

(a) To knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, with the proceeds of specified unlawful activity, that is health care fraud in violation of Title 18, United States Code, Section 1347, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i), and

(b) To knowingly engage and attempt to engage, in monetary transactions within the United States, by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is health care fraud, in violation of Title 18, United States Code, Section 1957.

All in violation of Title 18, United States Code, Section 1956(h).

<u>THE MANNER AND MEANS OF THE CONSPIRACY</u>

The manner and means used to accomplish the object of the conspiracy included, among others, the following:

13

62.     Jamshid Noryian, Dehshid Nourian, and Christopher Rydberg, obtained and maintained control of Ability, Industrial & Family, and Park Row, and caused the submission of false and fraudulent claims for reimbursement for compound medications that were not wanted, not needed, not used, not legitimately prescribed and which were the product of kickbacks.

63.     Jamshid Noryian, Dehshid Nourian, and Christopher Rydberg established and maintained control of bank accounts for Ability, Industrial & Family, and Park Row, into which reimbursement payments based on false and fraudulent claims were deposited, which reimbursement payments were then transferred.

64.     Jamshid Noryian, Dehshid Nourian, Christopher Rydberg, Ashraf Mofid, and Leyla Nourian created, obtained, and maintained control over entities and bank accounts for these entities including, among others, Bandoola, Jade and Joy Holdings, and HJLM Holdings and personal bank and investment accounts in order to conceal the fraud and the fraud proceeds.

65.     Jamshid Noryian, Dehshid Nourian, Christopher Rydberg, Ashraf Mofid, and Leyla Nourian would cause the transfer of monies between and among Bandoola, Jade and Joy Holdings, and HJLM Holdings and other entities, and personal bank and investment accounts in order to conceal the fraud and the fraud proceeds. The bank and investment accounts used in this scheme are:

| Account Name | Financial Institution | Account Number Ending In | Account Owner/ Authorized Signor |
|---|---|---|---|
| Ability Pharmacy, Inc. | Bank of America | *5271 | Dehshid Nourian Christopher Rydberg |
| Ability Pharmacy, Inc. | JP Morgan Chase | *2280 | Dehshid Nourian Christopher Rydberg |
| Ability Pharmacy, Inc. | Prosperity Bank | *6341 | Dehshid Nourian Christopher Rydberg |
| Ability Pharmacy, Inc. | Prosperity Bank | *9542 | Dehshid Nourian Christopher Rydberg |
| Industrial & Family Pharmacy, Inc. | JP Morgan Chase | *9863 | Dehshid Nourian Christopher Rydberg |
| Industrial & Family Pharmacy, Inc. | Wells Fargo Bank | *0302 | Dehshid Nourian Christopher Rydberg |
| Park Row Pharmacy, LLC | Compass | *4076 | Christopher Rydberg |
| Bandoola Pharmaceutical, LLC | Wells Fargo | *8897 | Ashraf Mofid Leyla Nourian Christopher Rydberg |
| Bandoola Pharmaceutical, LLC | Bancorp South | *5371 | Christopher Rydberg |
| HJLM Holdings, LLC | Wells Fargo Bank | *3119 | Christopher Rydberg |
| Jade and Joy Holdings, LLC | JP Morgan Chase | *7273 | Leyla Nourian |
| Jade and Joy Holdings, LLC | JP Morgan Chase | *3462 | Leyla Nourian Christopher Rydberg |
| Dehshid Nourian | Wells Fargo Bank | *6032 | Dehshid Nourian Leyla Nourian |

| Sherri Mofid | Scottrade | *1792 | Ashraf Mofid |
|---|---|---|---|
| Sherri Mofid | Scottrade | *1793 | Ashraf Mofid |
| Dehshid Nourian | Scottrade | *7680 | Dehshid Nourian |
| Sherri Mofid | TD Ameritrade | *3760 | Ashraf Mofid Christopher Rydberg Jamshid Noryian |
| Dehshid Nourian | TD Ameritrade | *8494 | Dehshid Nourian |

66.     Wells Fargo bank account xxx3119 records in the name of HJLM Holding LLC revealed a check in the amount of $1,000.00 written to "Autobahn BMW" on November 19, 2015. The check's memo indicated "car deposit". The check was signed by Christopher Rydberg.

67.     Wells Fargo bank account xxx3119 records revealed Christopher Rydberg remitted a check to "Autobahn" for $144,792.96 on December 2, 2015. The check was in the name of "HJLM Holding, LLC Christopher J Rydberg, 558 Hemphill St. Fort Worth, TX 76104-2252".

68.     Records obtained from Autobahn Motorcar Group indicated that on December 2, 2015, Christopher Rydberg purchased a 2016 BMW 750LXI sedan (Vehicle Identification Number WBA7F2C58GG416750) from Autobahn Motorcar Group at a total cost of $145,792.98, less deposit of $1,000.00. Autobahn Motorcar provided copies of the checks signed by Christopher Rydberg on November 19, 2015 and December 2, 2015.

69.     Autobahn Motorcar Group provided service records indicating the vehicle was brought in for service on August 17, 2016 and R.R. signed a Customer Repair Order. The vehicle was also brought in for service on September 9, 2016 and R.R signed a Customer Repair Order.

70.     On February 17, 2017, the vehicle was observed parked in front of Bandoola at 401 College Avenue, Fort Worth, Texas.

71.     On April 21, 2017, Texas Department of Public Safety confirmed Vehicle Identification Number WBA7F2C58GG416750, Texas license plate "GNT5131" was currently registered to HJLM Holding, LLC 558 Hemphill Street Fort Worth, Texas 76104.

72.     Using the lowest intermediate balance methodology[1] for tracing DOL-OWCP proceeds, it was determined $129,093.24 associated with the purchase of the vehicle originated from DOL-OWCP payments to the account in the name of Ability Pharmacy Inc. (Prosperity account xxx9542). These funds were traced through two additional accounts both in the name of Ability Pharmacy Inc. (Prosperity account xxx6341 and JP Morgan Chase account xxx2280) before being transferred to Wells Fargo account xxx3119 in the name of HJLM Holding LLC.

---

1 *The lowest intermediate balance methodology assumes the account holder spends his own money from the commingled account before he spends the government's proceeds. The government's proceeds only remain in the account to the extent that the account balance remains at or above the amount of the proceeds. When the account holder's balance drops below the total amount of proceeds, the government's proceeds drop accordingly.*

## **CONCLUSION**

73.    Based on the aforementioned facts, I submit there is probable cause to believe the

2016 BMW 750LXI Sedan, Vehicle Identification Number WBA7F2C58GG416750,

derived from proceeds traceable to violations of Sections 1347 (Health Care Fraud) and

1349 (Conspiracy to Commit Health Care Fraud).


                        Adam Watson
                        Special Agent, (USPS-OIG)

SWORN TO AND SUBSCRIBED before me this ____ day of May 2017.


                        PAUL D. STICKNEY
                        United States Magistrate Judge